IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03709-PAB-SBP

DANIEL GLASER,

      Plaintiff,

v.

CITY OF BOULDER, and
PARK GABLES HOMEOWNERS ASSOCIATION,

      Defendants.

---

**ORDER**

---

      This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction [Docket No. 17].  Defendant the City of Boulder ("the City") filed a response.  Docket No. 34.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND

      On November 17, 2025, plaintiff Daniel Glaser[1] filed his complaint against Boulder and Park Gables Homeowners Association ("Park Gables").  Docket No. 1.  On December 22, 2025, plaintiff filed a First Amended Complaint.  Docket No. 12.  On February 28, 2026, plaintiff filed a Second Amended Complaint.  Docket No. 19.  Plaintiff did not seek leave of court or obtain the consent of defendants before filing the Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  After filing the

---

[1] Because plaintiff is proceeding pro se, the Court construes his filings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Second Amended Complaint, plaintiff filed a motion for leave to amend his complaint, which is pending before the assigned magistrate judge. *See* Docket No. 38. Thus, the First Amended Complaint is the operative complaint. In the First Amended Complaint, plaintiff brings claims for (1) disability discrimination under the Fair Housing Act the (the "FHA"), (2) retaliation under the FHA, and (3) "constructive eviction" and retaliation in violation of the Colorado Fair Housing Act ("CFHA"), which is part of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-502. Docket No. 12 at 10.

Plaintiff's claims arise out of his ownership of the property located at 210 Arapahoe Avenue, Boulder, Colorado (the "Property"), which plaintiff purchased through the City's Permanently Affordable Homeownership Program and which is subject to the Permanently Affordable Housing Covenant ("the Covenant") that is enforced by the City. *See id.* at 6, ¶¶ 1-2. The purpose of the Covenant is to "preserve the affordability of the Property for persons of low or moderate income." *See* Docket No. 17-10 at 1. Furthermore, the Covenant is designed to address the scarcity of affordable homes in the City, such that it is important that eligible buyers occupy the properties covered by the Covenant or sell the home so that another eligible buyer can purchase the home. *See* Docket No. 34 at 4 (citing Docket No. 34-8). To serve this purpose, the Covenant requires that the owner use the Property as his or her primary residence. *See* Docket No. 17-10 at 9. "Primary Residence" is defined as "the residence which the Owner occupies for a minimum of ten (10) full months out of every calendar year." *Id.* at 3. The owner of the Property is required to "certify to the City in writing his or her intent to occupy the Property as his or her primary residence" before title is transferred. *Id.* at 9.

2

The Covenant prohibits plaintiff from leasing his property for more than one year out of every seven-year period.  *See id.*

Plaintiff alleges that, upon moving into the property in May 2016, he discovered a "non-functional sewer line beneath the foundation."  Docket No. 12 at 6, ¶ 6.  Plaintiff alleges that he endured a "nine-month habitability crisis" due to "substandard repairs" being performed by Park Gables that forced plaintiff to hire "independent professionals to correct the defects."  *Id.* at 7, ¶¶ 7-8.  Plaintiff also alleges that he requested a "capital improvement credit to remove a non-compliant 35-inch closet, despite City code requiring 49 inches."  *Id.*, ¶ 9.  He claims that City officials "repeatedly mischaracterized code requirements and characterized Plaintiff as 'uncooperative,' contributing to a hostile environment."  *Id.*, ¶ 10.  Plaintiff alleges that Park Gables, from 2020 to 2021, "treated Plaintiff differently from other landowners in landscaping and maintenance decision, reinforcing a hostile environment."  *See id.*, ¶ 14.  Specifically, plaintiff alleges that Park Gables "installed a six-foot fence without permit or consultation, blocking access to Plaintiff's side yard and creating unsafe conditions" and "dismissed documented drainage failures near Plaintiff's unit."  *Id.*, ¶¶ 11, 13.  Plaintiff claims that he "publicly testified to Boulder City Council in 2022 regarding unsafe conditions and misrepresentations by City Housing staff."  *Id.*, ¶ 15.

Plaintiff states that he has "documented disabilities, including Crohn's disease and psychiatric conditions, verified by medical professionals."  *Id.* at 8, ¶ 19.  On August 18, 2023, plaintiff submitted a "medical leave request" to the City that explained "continued residence was medically unsafe."  *Id.*, ¶ 20.  On September 11, 2023, the

3

City granted plaintiff an exception to the Covenant and permitted plaintiff to rent his unit for a total of two years.  *See id.*, ¶ 21.

On July 21, 2025, plaintiff sent a letter to Park Gables and the City requesting that he be permitted to rent his unit beyond the two-year period.  *See* Docket Nos. 17-5, 17-6.  Plaintiff explained why his disability prevented him from re-occupying the property as follows:

> Unfortunately, due to a severe mental disability, my current medical condition prevents me from safely residing in my home at this time.  As documented by my treating mental health professional, the specific environment at my property has profoundly exacerbated my mental health, leading to severe crises, including forced hospitalization due to a threat to my own life.  Continuing to reside there would pose a direct and serious risk to my well-being.
>
> Therefore, based on this clear and ongoing medical necessity, I am formally requesting a **reasonable accommodation to extend my absence from the property, without penalty or requirement to return, until such time as I receive specific medical clearance from my treating mental health professional indicating it is safe for me to reside there**.  This accommodation is necessary to afford me an equal opportunity to use and enjoy my dwelling, given the severe limitations imposed by my disability and the direct threat to my health if I return.  The inability to reside in my unit due to these circumstances, and any restrictions on managing it appropriately (e.g., through rental), has also caused significant financial and emotional hardship.

Docket No. 17-5 at 1-2.  Under seal, plaintiff filed a letter from his mental health professional, Tracey A. Lamers, in support of his request for an exception from the Covenant.  *See* Docket No. 2 at 3-5.  On September 10, 2025, the City denied plaintiff's request and required plaintiff to either re-occupy or sell the property by February 28, 2026.  *See* Docket No. 17-8.

The declaration of Eli Urken, Homeownership Manager for the City's Housing and Human Services Department, states that as of January 23, 2026, 106 certified and eligible households were waiting for the opportunity to purchase a home through the

affordable homeownership program and an additional 77 households were waiting for

their turn to apply for the program.  Docket No. 34-8 at 2, ¶ 4.

In his motion for a preliminary injunction, plaintiff asks the Court to enjoin the City

and Park Gables from requiring plaintiff to re-occupy or sell the property and from

interfering with plaintiff's ability to lease the property.  *See* Docket No. 17 at 14-15.

## II.    LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show

(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer

irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips

in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling

Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def.

Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir.

2010).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief

must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib.*,

*LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v.

Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).

Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian

Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989),

"is the exception rather than the rule."  *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th

Cir. 1984).

## III.    ANALYSIS

### A. <u>Service on Park Gables</u>

Plaintiff seeks preliminary relief against Park Gables.  *See* Docket No. 17 at 14-15.  However, Park Gables has not appeared in this case.  Rule 4(h)(1)(B) provides that a plaintiff may serve process on a corporation or unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B); *see also Howarth v. TCER, LLC,* No. 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *3 (D. Colo. Oct. 13, 2021).

In the alternative, a plaintiff may serve a corporation or unincorporated association "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1) allows service to be made "following state law" for either the state where the district court is located or where service is made.  Under Colorado law, a plaintiff can effectuate service on an association by delivering a copy to:

> the registered agent for service as set forth in the most recently filed document in the records of the secretary of state of [Colorado] or of any other jurisdiction, or that agent's secretary or assistant, or one of the following:
>
> > (A) An officer of any form of entity having officers, or that officer's secretary or assistant;
> >
> > (B) A general partner of any form of partnership, or that general partner's secretary or assistant;
> >
> > (C) A manager of a limited liability company or limited partnership association in which management is vested in managers rather than members, or that manager's secretary or assistant;
> >
> > (D) A member of a limited liability company or limited partnership association in which management is vested in the members or in which management is vested in managers and there are no managers, or that member's secretary or assistant;

6

(E) A trustee of a trust, or that trustee's secretary or assistant;

(F) The functional equivalent of any person described in paragraphs (A) through (E) of this subsection (4), regardless of such person's title. . .

(G) If no person listed in subsection (4) of this rule can be found in this state, upon any person serving as a shareholder, member, partner, or other person having an ownership or similar interest in, or any director, agent, or principal employee of such entity, who can be found in this state, or service as otherwise provided by law.

Colo. R. Civ. P. 4(e)(4); *see also Howarth*, 2021 WL 4775270, at *4.

On March 9, 2026, plaintiff filed Proof of Service for Park Gables. Docket No. 24. The Proof of Service states that Park Gables's registered agent is Schaefer Legal, LLC. *Id.* at 1. The Proof of Service states that Brian Makare is designated by law to accept service of process on behalf of Park Gables and was served on March 6, 2026. *Id.* at 2. There is no evidence indicating who Mr. Makare is, at what address he was served, or how he is an individual authorized to receive service of process on behalf of Park Gables pursuant to Fed. R. Civ. P. 4(h)(1)(B) or Colo. R. Civ. P. 4(e)(4). There is no indication that Mr. Makare is authorized to accept service on behalf of the Registered Agent or Park Gables. "[N]either C.R.C.P. 4(e)(1) nor 4(e)(4) indicate that service could be accomplished by serving someone 'authorized to receive service' where that person merely represents the same, nor does the Colorado Supreme Court's ruling in *Goodman Associates* permit such a broad interpretation of the rules." *Shields v. Duncan*, No. 14-cv-02231-RM-MEH, 2015 WL 3947221, at *3 (D. Colo. June 26, 2015); *see Howarth*, 2021 WL 4775270, at *5 (finding that service was not proper where the proof of service was left with an individual identified as an "admin asst." and the process server "checked the box indicating that [the administrative assistant] is designated by

7

law to accept service on behalf of [the defendant]" because plaintiff failed to identify the administrative assistant as being the administrative assistant of defendant's registered agent or another authorized individual under Colo. R. Civ. P. 4(e)(4)) (internal quotation omitted). Service must be made upon an "employee whose position presumptively includes delivery of papers to the relevant party." *Goodman Assocs., LLC v. WP Mountain Properties, LLC,* 222 P.3d 310, 317 (Colo. 2010).

Because there is insufficient evidence indicating that plaintiff served Park Gables pursuant to Fed. R. Civ. P. 4, the Court will not consider plaintiff's preliminary injunction motion against Park Gables. Plaintiff shall serve defendant Park Gables in accordance with Fed. R. Civ. P. 4 and file Proof of Service.[2]

### B. Plaintiff's Motion for Preliminary Injunction

The Court first considers whether plaintiff has shown a likelihood of success on the merits against the City.[3]

#### 1. Claim One – Fair Housing Act Failure to Accommodate

In Claim One, plaintiff alleges that defendants discriminated against plaintiff in violation of the FHA because they "denied reasonable accommodation requests despite verified medical necessity." Docket No. 12 at 10, ¶ 2. For purposes of plaintiff's motion,

---

[2] The City argues that the Court should deny plaintiff's motion for preliminary injunction because it was not properly served. *See* Docket No. 34 at 3. The City represents that plaintiff served the City with the Second Amended Complaint, Docket No. 19, and not the First Amended Complaint, Docket No. 12. *See id.* The City has filed a Motion to Quash Service of Process, *see* Docket No. 32, which is currently pending before the magistrate judge. Plaintiff has filed a motion for leave to amend his complaint, *see* Docket No. 38, which is also pending before the magistrate judge.
[3] Because plaintiff has not properly served Park Gables, the Court will not consider the motion for a preliminary injunction to the extent that it is brought against Park Gables.

the City does not contest that the Permanently Affordable Homeownership Program and
the Covenant are subject to the FHA.  *See* Docket No. 34 at 4-9.  Thus, the City does
not dispute that it is required to provide reasonable accommodations to disabled
individuals.  *See id.*  Rather, the City argues that plaintiff's request for an
accommodation is not reasonable.  *See id.*

To bring a claim for a failure-to-accommodate under the FHA, a plaintiff "must
show that [his] requested accommodation was reasonable and necessary to afford
. . . disabled residents the 'equal opportunity to use and enjoy a dwelling.'"  *Courage to
Change Ranches Holding Co. v. El Paso Cnty., Colo.*, 73 F.4th 1175, 1204 (10th Cir.
2023) (quoting 42 U.S.C. § 3604(f)(3)(B)).  A plaintiff must show that the requested
accommodation is reasonable and necessary to give equal housing opportunities to
disabled individuals.  *See id.* at 1204-06.

### a.  Reasonableness

An accommodation is not reasonable if "it requires a fundamental alteration in the
nature of a government program or imposes undue financial and administrative burdens
on the government."  *Id.* at 1204 (alteration, internal quotations, and citation omitted).
As shown by the evidence submitted by plaintiff, the City, through the Covenant, has a
program to facilitate home ownership by people with low to moderate incomes.  *See
generally* Docket No. 17-10.  The Covenant requires that the "Owner shall use the
Property as his or her primary residence.  At or before the time when title is transferred
to the Property, each new Owner shall certify to the City in writing his or her intent to
occupy the Property as his or her primary residence."  *Id.* at 9.  The Covenant
encourages home occupancy by imposing restrictions on a homeowner's ability to rent

9

out the property and by requiring that the owner occupy the property ten full months each year.  *See id.* at 3, 9.  For example, the owner may rent the Property "for no more than a period or periods of time aggregating one year out of every seven year period."  *Id.*

The accommodation plaintiff seeks is one enabling him to live elsewhere and to lease the home to tenants at market rates.  The City denied plaintiff's request for the following reason:

> The purpose of the City's affordable homeownership program is to assist low-, moderate-, and middle-income households with purchasing a home for less than its market-rate value; the City intends for these households to occupy the permanently affordable home. Your request to indefinitely remain absent from the Property is contrary to the purpose of the affordable homeownership program, and your continued absence from and market-rate rental of the Property prevents it from being purchased and occupied by another qualified buyer.  Because your request is opposed to the intent of the City's program, the City does not believe it is reasonable and therefore must deny the request.

*See* Docket No. 17-8.

The Court agrees with the City that plaintiff's requested accommodation would fundamentally alter the nature of the affordable homeownership program.  As a result, plaintiff's requested accommodation is not reasonable.  *See Courage to Change Ranches*, 73 F.4th at 1204.  Because plaintiff's preliminary injunction motion fails to show that the requested accommodation is reasonable, plaintiff has failed to show a likelihood of success on the merits on Claim One.

### b.  Necessary to Give Equal Housing Opportunities to Disabled Persons

Even if plaintiff's requested accommodation was reasonable, the Court finds that plaintiff has failed to show that the accommodation is necessary to provide equal housing opportunities to him as a disabled individual.  To show that an accommodation

10

is necessary under the FHA, plaintiff must "establish a nexus between the accommodations that [he] is requesting, and their necessity for providing disabled individuals an "equal opportunity' to use and enjoy housing."  *See id*. at 1205 (alteration and citation omitted).  A necessary accommodation is one that "ensure[s] the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities."  *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012).  "[W]hen there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense."  *Id.*

To determine whether the requested accommodation is necessary under the FHA, a court determines whether plaintiff has demonstrated a causal link between his disability and the accommodation.  *See Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1191 (9th Cir. 2021) ("there must be a 'causal link' between the requested accommodation and the plaintiff's disability").  Here, plaintiff contends that he has a "severe mental disability" that is exacerbated by the "specific environment" at the Property.  *See* Docket No. 17-5 at 1.  In support, plaintiff cites documentation from his "treating mental health professional," Tracey Lamers.  *See id.*; Docket No. 2.  Ms. Lamers contends that plaintiff cannot occupy the property because of events that began in 2016, which include the non-functioning sewer pipe and the closet that failed to comply with code requirements.  *See* Docket No. 2 at 3.

Ms. Lamers, however, fails to identify any ongoing condition at the Property that causes plaintiff harm based on his disability.  Rather, Ms. Lamers focuses on ongoing acts by defendants outside of the Property that are allegedly harming plaintiff.  Ms.

11

Lamers claims that defendants are harming plaintiff and exacerbating his disability by questioning the legitimacy of his disability, invalidating his concerns, and being hostile in response to plaintiff's requests regarding his disability. *See id.* Even accepting Ms. Lamers's claims at face value, the conduct described by Ms. Lamers has no relevance to any ongoing, environmental condition at the Property that prevents plaintiff from re-occupying the Property. Furthermore, even if the Court were to order defendants to provide plaintiff the accommodation he seeks, it would not alleviate the harm described by Ms. Lamers. Defendants' alleged harassment and hostile acts towards plaintiff, which are allegedly based on their view that plaintiff's disability and requested accommodation are not legitimate, could continue throughout the litigation process. Plaintiff fails to submit any other evidence demonstrating that Property conditions in 2016 remain an ongoing issue. The fact that plaintiff has leased the Property to a tenant since January 1, 2024 belies any assertion that current conditions make the Property unsafe. *See* Docket No. 17-5 at 1. Accordingly, the Court finds that plaintiff fails to establish a casual connection between his disability and the requested accommodation.

Second, the Court will consider whether plaintiff's requested accommodation is one that is available to "similarly situated nondisabled residents." *See Courage to Change Ranches*, 73 F.4th at 1205 (holding that an accommodation was not necessary to achieve equal housing opportunities under the FHA because it "wasn't available to similarly situated nondisabled residents"); <u>Metropolital Fair Hous. Council of Okla., Inc. v. Feiock</u>, 2024 WL 1516075, at *4 (E.D. Okla. Apr. 8, 2024) (holding that plaintiffs' requested accommodation was not necessary under the FHA because it "was not an

equal housing opportunity, but a better one").  Here, evidence submitted by plaintiff
shows that a nondisabled homeowner subject to the Covenant does not have the
opportunity to purchase a property at a below-market rate and then indefinitely rent the
property at market-rate.  The Covenant provides that the owner "may not rent or lease
the entirety of the Property during the first five year period" and "may rent or lease the
entirety of the Property for no more than a period or periods of time aggregating one
year out of every seven year period."  Docket No. 17-10 at 9.  A nondisabled
homeowner is required to use the property as his or her primary residence.  *See id.*
Moreover, the FHA does not protect a plaintiff's right to rent property to others.  *See*
*Sims v. Tex. Dep't of Hous. & Cmty. Affairs,* 2008 WL 4552784, at *2 (S.D. Tex. Oct. 7,
2008) ("the FHA does not protect potential landlords or potential real estate owners");
*Stowe v. Chalet Capri Condo. Ass'n, Inc.*, 2025 WL 3034803, at *4 (M.D. Fla. Oct. 30,
2025) ("the FHA does not independently protect an owner's right to use a property as a
short-term rental").  Thus, the Court finds that plaintiff fails to show that his requested
accommodation would be available to a nondisabled homeowner.  Therefore, his
accommodation is not necessary to provide him an "equal opportunity to use and enjoy"
the Property.  *Courage to Change Ranches*, 73 F.4th at 1205.  Therefore, the Court
finds that plaintiff is unlikely to succeed on the merits of Claim One.

### 2.  Claim Two – Fair Housing Act Retaliation

Under Claim Two, plaintiff alleges that defendants retaliated against plaintiff in
violation of the FHA.  *See* Docket No. 12 at 10.  Specifically, plaintiff alleges that, in
retaliation for plaintiff "requesting accommodations and reporting unsafe conditions,"

13

defendants have required plaintiff to either re-occupy or sell the property.[4]  *See id.*
Under the FHA, it is unlawful "to coerce, intimidate, threaten, or interfere with any
person in the exercise or enjoyment of, or on account of his having exercised or enjoyed
. . .  any right granted or protected" by the FHA.  42 U.S.C. § 3617.  "To state a
retaliation claim under the FHA, a plaintiff must show that (1) he was engaged in
protected activity; (2) he suffered an adverse action in the form of coercion, intimidation,
threats, or interference; and (3) there was a causal link between the two."  *Castillo v.
Walsh*, No. 24-cv-03521-SKC-NRN, 2026 WL 975978, at *3 (D. Colo. Mar. 31, 2026).
Plaintiff alleges that he engaged in protected activity by complaining about the sewer
line and size of his closet between 2016 and 2017.  *See* Docket No. 12 at 6-7, ¶¶ 6-10.
He alleges that, in 2022, he testified before Boulder City Council regarding "unsafe
conditions and misrepresentations by City Housing staff."  *Id.* at 7, ¶ 15.  Finally, plaintiff
claims that his request for an accommodation, permitting him to rent the property
despite the Covenant, was a protected activity.  *See id.* at 8-9, ¶¶ 19-28.

Plaintiff's request for an accommodation does not constitute protected activity.
As discussed regarding Claim One, such request was not reasonable and necessary
and is therefore not protected by the FHA.  *See Philippeaux v. Apartment Inv. & Mgmt.
Co.,* 598 F. App'x 640, 645 (11th Cir. 2015) (unpublished) (holding that plaintiff's
request for a reasonable accommodation was not "statutorily protected activity" under
the FHA because the accommodation was "not objectively reasonable"); *Fedynich v.*

---

[4] To the extent that plaintiff alleges that defendants engaged in other retaliatory acts, such acts are not related to the relief sought by plaintiff, which is that the Court enjoin defendants from requiring him to re-occupy or sell the property.  *See* Docket No. 17 at 14-15.  Therefore, the Court will only consider plaintiff's retaliation claim as it relates to defendants' reoccupation requirement.

*Stalkfleet*, 784 F. Supp. 3d 1146, 1170 (N.D. Iowa 2025) (dismissing plaintiffs' FHA

retaliation claim where the court "determined as a matter of law that none of plaintiffs'

requested accommodations were reasonable"); *Smith v. AMH 2014-1 Borrower, LLC*,

2023 WL 6620371, at *6 (N.D. Ga. Sept. 5, 2023), *aff'd*, 2024 WL 1460309 (11th Cir.

Apr. 4, 2024) ("It is clear under the case law that requesting a reasonable

accommodation is a protected activity under the FHA.  But making a request for an

*unreasonable* accommodation is not.") (internal citation omitted).

Moreover, even assuming that plaintiff's complaints in 2016, 2017, and 2022

constitute protected activity, there is no evidence in the record that demonstrates a

casual connection between these complaints and defendants' reoccupation

requirement.  Given the gap of time between plaintiff's 2016, 2017, and 2022 complaints

and defendants' 2025 reoccupation requirement, plaintiff's failure to provide evidence

supporting causation shows that he is unlikely to prevail on the merits of his FHA

retaliation claim.  *Cf. Stratton v. United Launch All., L.L.C.*, No. 13-cv-01756-RBJ-KLM,

2014 WL 3644565, at *4 (D. Colo. July 23, 2014) (finding that plaintiff failed to establish

a casual connection where he "did not plead sufficient material allegations to establish a

causal connection between the protected activity and the alleged retaliatory action in

spite of the seven month gap"); *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253

(10th Cir. 2001) ("Unless there is very close temporal proximity between the protected

activity and the retaliatory conduct, the plaintiff must offer additional evidence to

establish causation."); *Muragara v. Moneygram Payment Sys. Int'l*, No. 15-cv-00939-

MEH, 2016 WL 30647, at *3 (D. Colo. Jan. 4, 2016) ("With no facts to show causation

between Plaintiff's protected activity and alleged retaliation, Plaintiff would have to rely

on temporal proximity to prove his retaliation claim . . . .").  Accordingly, the Court finds

that plaintiff is unlikely to succeed on the merits of Claim Two.

### 3.  Claim Three – Colorado Fair Housing Act Violation

Finally, in Claim Three, plaintiff alleges that defendants' reoccupation

requirement violates the CFHA.[5]  *See* Docket No. 12 at 10.  The CFHA "prohibits

housing discrimination due to a person's protected characteristic or membership in a

protected class."  *See Castillo*, 2025 WL 4678424, at *3 (citing Colo. Rev. Stat. § 24-34-

502(1)(a)(I)).  To state a CFHA claim, a party must allege a "causal connection between

his disability or protected status and the alleged adverse actions."  *Id.* at *4.  "[F]ederal

cases interpreting the Federal Fair Housing Act are persuasive in interpreting provisions

of the CFHA."  *Smith v. Avanti*, 249 F. Supp. 3d 1194, 1202 (D. Colo. 2017) (citation

omitted).  Because plaintiff's CFHA claim is based on the same conduct as his FHA

claim, the Court finds that plaintiff is also unlikely to succeed on the merits of Claim

Three.  *See id.* ("The Court finds no reason why the analysis under the FHA should not

be equally applicable under the CADA."); *Terry v. Fairfield Props., LP*, No. 22-cv-02095-

RMR-SKC, 2023 WL 12189312, at *5 (D. Colo. Aug. 14, 2023), *report and

recommendation adopted*, 2023 WL 12189321 (D. Colo. Aug. 29, 2023) (finding that

plaintiff's CFHA "claim should also be dismissed for the same reasons her Fair Housing

Act claim fails").

---

[5] As was the case for Claim Two, the Court, at this stage of the proceedings, will only consider defendants' reoccupation requirement as the alleged conduct that violates the CFHA as it is the only alleged wrongdoing that is connected to the relief that plaintiff seeks in his motion for preliminary injunction.

### 4. Preliminary Injunction Hearing

The Court finds that it can resolve plaintiff's motion for a preliminary injunction without a hearing. "District courts in the Tenth Circuit have declined to hold evidentiary hearings . . . where a plaintiff cannot supply sufficient evidence to justify granting the preliminary injunction." *Nellson v. Barnhart*, No. 20-cv-00756-PAB, 2020 WL 3000961, at *5 (D. Colo. June 4, 2020) (collecting cases); *see also* Procedure on an Application for a Preliminary Injunction, 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed.) ("When the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless, a court may deny an oral hearing under Federal Rule of Civil Procedure 78(b), which provides that 'the court may provide for submitting and determining motions on briefs, without oral hearings.'") (footnote omitted); *Nat'l Propane Gas Ass'n v. U.S. Dep't of Homeland Sec.,* 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (a court may deny a motion for a preliminary injunction "without first providing a hearing on the merits when the record is sufficient to demonstrate a lack of right to relief").

Plaintiff's requested accommodation to the City is documented in his letter to the City, Docket No. 17-5, and described in his complaint and preliminary injunction motion. As discussed above, plaintiff's requested accommodation is not reasonable and not necessary to provide him an equal opportunity to use and enjoy the Property. Moreover, even accepting at face value Ms. Lamers's opinions regarding plaintiff's inability to occupy the Property, they fail to show that there is a casual link between conditions at the Property and plaintiff's disability. In other words, there is no evidence that plaintiff will suffer an injury due to his disability absent him being excepted from the

17

reoccupation requirement.  *See Howard*, 988 F.3d at 1191 ("Because there is no indication that [plaintiff] would have suffered any injury because of his disability absent a tenancy extension, there is no causal link between his disability and the requested accommodation.").  Similarly, plaintiff has failed to produce any evidence demonstrating a casual connection between any protected activity under FHA and defendants' conduct in support of his retaliation claim.  Because plaintiff has produced no evidence to support his FHA claims, there is no basis for his CFHA claim.

Accordingly, the Court finds that plaintiff has failed to show a likelihood of success on the merits and will deny the motion for a preliminary injunction.

## IV.     CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Motion for Preliminary Injunction [Docket No. 17] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Emergency Motion for Preliminary Injunction [Docket No. 4] is **DENIED as moot**.[6]  It is further

**ORDERED** that, within 30 days of this Order, plaintiff shall serve defendant Park Gables, in accordance with Fed. R. Civ. P. 4, and file Proof of Service.

DATED June 5, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[6] Because the Court will deny plaintiff's superseding motion for preliminary injunction, it will deny plaintiff's earlier filed motion as moot.

18